IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLIE COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:22-CV-108-KFP |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Charlie Cooper filed a Complaint seeking review of the Social Security Administration's decision denying his application for supplemental security income. Doc. 1. The Court construes Plaintiff's supporting brief (Doc. 15) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 16) as a motion for summary judgment. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). Docs. 7, 8.

After scrutiny of the record and the motions submitted by the parties, the Court finds that Plaintiff's motion for summary judgment is due to be DENIED, the Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

I.     STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

II.    PROCEDURAL BACKGROUND

Plaintiff was 51 years old when the Administrative Law Judge rendered a decision finding him not disabled. R. 21–22. Plaintiff alleged disability due to high blood pressure, gout, pancreatitis, lower back pain, sleep apnea, and "special ed." R. 218. His initial application was denied, and he requested a hearing before an ALJ. R. 76, 83–85. After a hearing, the ALJ issued a decision finding Plaintiff not disabled. R. 12, 22. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. R. 1–3; *see* 42 U.S.C. § 405(g).

III.   THE ALJ'S DECISION

The ALJ found that Plaintiff had severe impairments of hypertension, gout, and obesity but that he did not have an impairment or combination of impairments that met or

2

medically equaled a listed impairment. R. 17. He then found that Plaintiff has the residual functional capacity to perform a full range of medium work. R. 18.

The ALJ determined that Plaintiff could perform his past relevant work as a forklift operator. R. 21. Considering Plaintiff's age, education, work experience, and RFC, the ALJ also determined there were other jobs in the national economy that Plaintiff could perform, including a scrap sorter, kitchen helper, or a motor vehicle assembler. *Id.* The ALJ ultimately concluded that Plaintiff had not been under a disability from the alleged onset date, December 2, 2019, through the date of the ALJ's decision, May 28, 2021. R. 22.

## IV.   DISCUSSION

Plaintiff raises the following issues on appeal: (1) the RFC is not supported by substantial evidence, (2) the ALJ failed to pose complete hypothetical questions to the vocational expert, (3) the ALJ failed to fully and fairly develop the record by not ordering IQ testing, and (4) the ALJ erred in evaluating the listing.

### A.   Substantial evidence supports the RFC.

The RFC restricted Plaintiff to a full range of medium work. R. 18. As the ALJ explained, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, and it may require a good deal of walking or standing or sitting most of the time with some pushing and pulling of arm or leg controls." R. 20 (citing 20 CFR § 416.967(c)). Plaintiff challenges the RFC on two grounds: (1) the RFC fails to specify postural and mental limitations, and (2) the RFC fails to incorporate Plaintiff's severe impairments of obesity and gout. Both arguments fail.

### 1. Plaintiff waived his argument regarding functional limitations.

In two sentences, Plaintiff argues that the RFC is not supported by substantial evidence because it omits postural and mental limitations. *See* Doc. 15 at 7. Plaintiff states that the limitation to medium work "specifically deals with physical exertion. It provides nothing for postural limitations or mental limitations." *See id.* The argument is underdeveloped and unsupported. Accordingly, the Court considers the argument waived. *See Davis v. Soc. Sec. Admin., Comm'r*, No 4:20-CV-346-LSC, 2021 WL 3887467, at *6 (N.D. Ala. Aug. 31, 2021) (claimant waived claim because he failed to develop argument or cite supporting authority) (citing *Outlaw v. Barnhard*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006)); *Lewis v. Berryhill*, No. 1:17-CV-62-MW-GRJ, 2018 WL 1463725, at *5 (N.D. Fla. Mar. 1, 2018) ("[C]onclusory and unsupported arguments may be deemed waived.") (citing *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)).

### 2. The RFC is sufficient despite not specifying limitations pertaining to Plaintiff's obesity and gout.

The RFC is a determination of the most a claimant can do despite his limitations based on relevant medical and other evidence in the record. 20 C.F.R. §§ 416.945(a)(1), 416.945(a)(3). "Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence." *Talton v. Kijakazi*, No. CV 20-00543-B, 2022 WL 822158, at *6 (S.D. Ala. Mar. 17, 2022) (citing *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985)). As long as an ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[,]'" the RFC is supported by substantial evidence. *Nichols v. Kijakazi*,

No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)). In this circuit, if "the ALJ's RFC finding is supported by substantial evidence, there is no requirement to include any particular functional limitations, regardless of a claimant's severe impairments." *Davis v. Kijakazi*, No. 2:20-CV-402-JTA, 2022 WL 779773, at *4 (M.D. Ala. 2022) (citing *Davis-Grimplin v. Comm'r, Soc. Sec. Admin.*, 556 F. App'x 858, 860 (11th Cir. 2014)); *see also Fortner v.* Astrue, No. 4:12-CV-986-RDP, 2013 WL 3816551, at *6 (N.D. Ala. July 22, 2013) ("Severe impairments found at the second step of the analysis, however, do not necessarily 'impose significant work-related limitations' for the purposes of the subsequent RFC and hypothetical question steps.") (citing *Walters v. Barnart*, 184 F. Supp. 2d 1178, 1184 (M.D. Ala. 2001)). So long as substantial evidence supports the RFC determination, the Court must affirm. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 42 U.S.C. § 405(g).

Because the ALJ based the RFC on Plaintiff's medical records and opinion evidence, substantial evidence supports the RFC's limitation to a full range of medium work. Plaintiff offered few medical records for consideration, the majority of which are from Plaintiff's primary care physician, Dr. Sam R. Banner. *See* R. 255–70, 278–87. Although many of Dr. Banner's records are sparse in detail, they show that Plaintiff was treated for gout, lower back pain, and arm pain. *See* R. 255–63, 267–70. More insightful are the records from Dr. Banner's Disability Determination Service examination. R. 278–82. At this exam, Plaintiff's chief complaints included gout-related pain, lower back pain, and chronic headaches. R. 278. Dr. Banner also noted that Plaintiff completed eighth grade

5

with a learning disability and had a BMI of 35. *See* R. 278–79. He opined that Plaintiff needed lifelong medical care.[1] R. 282. The ALJ considered Dr. Banner's examination and concluded that the results were relatively normal. R. 19–20. Despite Plaintiff's gout-related complaints,[2] high blood pressure, and back pain, the ALJ recognized the following:

> Dr. Banner . . . noted the claimant's ability to get on and off an examination table without demonstrable pain or difficulty, normal gait, normal station, satisfactory tandem/heel to toe walk, intact sensation, normal reflexes, 5/5 upper extremities strength after five repetitions, normal bilateral grip strength, satisfactory bilateral fine and gross motions in both hands, ability to button and unbutton clothing without difficulty, 20/30 uncorrected vision in both eyes, negative Romberg sign, normal muscle bulk and tone, and otherwise normal cardiovascular examination results.

*Id.* With this, the ALJ provided a sufficient rationale linking the substantial record evidence to the ALJ's conclusion, so the RFC is supported by substantial evidence. *See Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. 3d at 1055); *see also Martin*, 894 F.2d at 1529.

The ALJ also used Dr. Banner's examination to make a specific finding as to Plaintiff's obesity. *See* R. 20. The ALJ recognized that Plaintiff's "obesity could possibly complicate or exacerbate his other impairments and negatively affect his ability to sustain work activity," but "Dr. Banner's examination results during the consultative evaluation

---

[1] Ultimately, the ALJ found Dr. Banner's statement regarding lifelong medical care to be unpersuasive because it was vague and did not pertain to his functional limitations. R. 21.

[2] Plaintiff argues the RFC is "rather odd" because the ALJ made multiple mentions of Plaintiff's limitations in relation to gout. Doc. 15 at 9. But many of the ALJ's discussions of Plaintiff's severe gout appear to summarize Plaintiff's subjective complaints. *See* R. 19 ("[Plaintiff] alleges he is unable to work due to his gout . . . [Plaintiff] has complained of chronic periodic episodes of pain in multiple areas due to progressively worsening gout."). Indeed, these statements are made in the context of the ALJ evaluating Plaintiff's subjective statements. *See id.* Regardless, for the reasons discussed below, even if the ALJ recognized the severity of Plaintiff's gout at step two, the RFC did not have to include any specific gout-related limitations.

were mostly normal despite the claimant's obesity." *See id.* Thus, the ALJ explained that the RFC accounted for his obesity "and its possible effects on his other impairments." *See id.* Again, this basis constitutes substantial evidence. *See Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. 3d at 1055); *see also Martin*, 894 F.2d at 1529.

Further, the ALJ based the RFC on opinion evidence from a state agency consultant, Dr. Gregory K. Parker. R. 20–21. Dr. Parker completed a physical RFC assessment and found that Plaintiff could perform medium work with frequent climbing of ramps, stairs, ladders, ropes, and scaffolds and could frequently kneel, crouch, and crawl. R. 71–73. The ALJ found the assessment generally persuasive based on the medium work but determined, "Dr. Parker's postural limitations are more restrictive than warranted by the record in light of the only modest objective abnormalities and Dr. Banner's mostly normal examination results." R. 20. This basis constitutes substantial evidence. *See Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. 3d at 1055); *see also Martin*, 894 F.2d at 1529.

Contrary to Plaintiff's claims, the ALJ did not have to include particular functional limitations regarding Plaintiff's obesity and gout because the RFC is supported by substantial evidence. *See Davis*, 2022 WL 779773 (citing *Davis-Grimplin*, 556 F. App'x at 860); *see also Fortner*, 2012 WL 3816551, at *6. Plaintiff argues that the ALJ failed to provide enough explanation to support the RFC. *See* Doc. 15 at 6–9. As discussed above, the decision shows the ALJ fully considered Plaintiff's obesity and gout, so he was not required to discuss each piece of evidence. *See Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021); *Dyer v. Barnart*, 395

7

F.3d 1206, 1211 (11th Cir. 2005) (stating ALJ is not required to discuss every piece of evidence so long as decision is not broad rejection and there is enough to conclude that ALJ considered medical condition as a whole). The ALJ did not err on these bases.

### B. The ALJ sufficiently questioned the vocational expert.

At step five, the Commissioner must "demonstrate the existence of 'significant numbers of jobs in the national economy' that the claimant can perform and that accounts for his [RFC], age, education, and work experience." *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 489–90 (11th Cir. 2015) (citations omitted). "To do so, an ALJ may rely solely on the testimony of a vocational expert to whom he poses a hypothetical question that comprises all of the claimant's impairments[.]" *Id.* (citations omitted). The hypothetical must "include or otherwise implicitly account for" all of a claimant's impairments. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

But an ALJ is not required to include in this hypothetical any functional limitations that he found unsupported. *See Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 828 (11th Cir. 2017) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)); *Paul v. Saul*, No 2:19-CV-514-SRW, 2020 WL 5414350, at *4 (M.D. Ala. Sept. 9, 2020) (holding hypothetical asking whether an individual of plaintiff's age, education, and work experience at a light exertion level was sufficient because, "[b]y posing a hypothetical . . . which included a limitation to the full range of light work, the ALJ implicitly accounted for all of the plaintiff's impairments" and "was not required to include any manipulative or postural limitations which she found unsupported"). *Id.*

At the hearing, the ALJ posed two hypotheticals: (1) could an individual with "the same age, education[,] and work experience as the Claimant with the additional limitation of the full range of medium work . . . return to the Claimant's past work or any part thereof"—to which the VE responded affirmatively—and (2) could an individual maintain employment if he missed at least two days or more of work—to which the VE responded negatively. R. 53–54. The ALJ relied on the first hypothetical in denying Plaintiff's claim. *See* R. 22.

In a conclusory manner, Plaintiff alleges the ALJ failed to pose a sufficient hypothetical question because his questions did not include "any information regarding the limitations that Mr. Cooper has due to his severe impairments." Doc. 15 at 10. As explained above, the ALJ properly considered Plaintiff's impairments and determined Plaintiff had the RFC to perform medium work; thus, the hypothetical implicitly accounted for all of Plaintiff's impairments. *See Paul*, 2020 WL 5414350, at *4–5. Still, Plaintiff maintains the ALJ failed to "accurately describe all Mr. Cooper's impairments and their accompanying limitations as found by Dr. Banner during regular visits and on the consultative examination." Doc. 15 at 10–11. But because the ALJ determined that the record did not support any functional restrictions, he was not required to include any additional limitations in the hypothetical. *See Brown*, 680 F. App'x at 828 (citing *Crawford*, 363 F.3d at 1161); *Paul*, 2020 WL 5414350, at *4–5.

Regarding the second hypothetical, Plaintiff similarly argues that the ALJ did not rely on the VE's finding and, "even if he did, failed to consider the limitations associated with Mr. Cooper's severe impairments." Doc. 15 at 11. This argument fails for the same

9

reason discussed above: the ALJ was not required to include in the hypothetical functional limitations that he found unsupported. *See Brown*, 680 F. App'x at 828 (citing *Crawford*, 363 F.3d at 1161); *Paul*, 2020 WL 5414350, at *4–5. Accordingly, the ALJ's posed a sufficient hypothetical.

### C. The ALJ properly developed the record.

An ALJ "has a basic duty to develop a full and fair record," but the plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). Under 42 U.S.C. § 421(h)(1), an initial determination "shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure (1) in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review."

An ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (holding ALJ did not have to order consultative examination because the record contained evidence that plaintiff was intelligent and his depression was alleviated by medication) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *Parker v. Colvin*, No. 3:15-CV-269-WC, 2016 WL 1092237 at *1, *3 (M.D. Ala. Mar. 21, 2016) (ALJ not required to order evaluation because plaintiff's mental-health treatment reduced symptoms and state-agency consultant found only a mild restriction). It is the claimant's duty to prove

he is disabled and, thus, to produce evidence in support of his claim. *See Watson v. Colvin*, No. 1:13-CV-17-GRJ, 2014 WL 11429276, at *4 (N.D. Fla. Jan. 27, 2014) (citing *Ellison*, 355 F.3d at 1276).

Plaintiff sought disability, in part, based on his enrollment in special education classes. R. 66. But there was little evidence supporting this claim. At the initial hearing, Plaintiff's representative provided the following information: Plaintiff had an eighth-grade education; Plaintiff took special education classes; Plaintiff was unable to maintain employment as a car washer because he was "too slow;" and Plaintiff had an IQ of 79 in 1986. R. 59–61. In support, Plaintiff offered a single education record from 1986, which is only minimally informative indicating that Plaintiff had a learning disability. *See* R. 189.

The ALJ relied on a psychiatric review technique assessment from Dr. Joanna Koulianos to determine that Plaintiff did not have any severe mental impairments. R. 18; *see also* R. 70. Dr. Koulianos determined that Plaintiff suffered no mental impairments and did not need to undergo a consultative examination. R. 70. Although the ALJ did not otherwise discuss Plaintiff's mental impairments, there was little evidence indicating that one existed. Plaintiff now claims that the ALJ failed to properly develop the record by not ordering IQ testing. Doc. 15 at 12–13.

At the initial administrative hearing, Plaintiff's representative alluded to a mental impairment several times by mentioning that Plaintiff had an "eighth grade special education" and had been let go because he was "too slow." R. 59–60. In light of the lack of evidence pertaining to Plaintiff's mental health, the ALJ ordered a consultative examination:

11

>   ALJ: What's his IQ? I don't see his school records, which -- Oh, here they are.
>
>   ATTY: Exhibit 1E and even with his low IQ, . . . when he started having the physical problems coupled with the psychological, he became unable to do sustained work and even when he was washing cars . . . they let him go because they didn't think he was smart -- he couldn't keep up.
>
>   ALJ: Well, let's do this since we have so few, you know, medical records. I'm going to send him for a psychological CE. Let's get a workup on him and we'll get a permanent full-scale IQ and see what's going on with him because . . . [r]ight now, we've got so few records[.]

R. 60–61. The ALJ continued the hearing so that Plaintiff could undergo additional testing. *See* R. 62. Based on the minimal evidence regarding Plaintiff's mental health, the ALJ appropriately ordered a consultative examination. *See* R. 61; *see also Ingram*, 496 F.3d at 1269 (citing *Doughty*, 245 F.3d at 1281).

However, at the supplemental hearing, Plaintiff's representative and the ALJ had the following conversation:

>   ATTY: [W]hen we had the hearing last year, it was continued before the pandemic to get IQ testing because we had provided the school records at . . . 1E that showed he had a [INADUIBLE] of 79 and at that time we were trying to show that he might equal the commission's listing, but since the original hearing, the Claimant has aged to 50 and we are arguing that at least as of his 50th birthday he would qualify for benefits under the medical vocational guidelines . . . . [Based on] gout[,] . . . blood pressure problems, the muscle skeletal problems, [and] the muscle spasms, we argue that all of those problems would restrict the Claimant . . . to no more than sedentary work and he would qualify for benefits[.] . . . At the first hearing, you were going to send him out for IQ testing and then everything shut down.
>
>   ALJ: That's what happened was I think I was going to him out and then they were not going to exam[ine] him because of the pandemic. I think now thought that that's opened back up.

12

>    ATTY:   Yes, it's opened back up and -- but instead of delaying the case, that's why I made the other argument. . . .

R. 30–31.

Plaintiff's claim that the ALJ failed to develop the record by not ordering IQ testing is patently incorrect. The ALJ ordered an IQ test; Plaintiff chose not to undergo one. His representative acknowledged that consultative examinations had resumed after the pandemic but that Plaintiff opted to forgo this testing so as not to further delay the case. *See id.* Instead, Plaintiff explained that he would rely on his physical impairments. *See id.*

It was Plaintiff's obligation to produce evidence to support his mental health claim, *see Watson*, 2014 WL 11429276, at *4 (citing Ellison, 355 F.3d at 1276), and the ALJ gave him an opportunity do so. By offering Plaintiff a chance to undergo testing, the ALJ satisfied his duty to develop the record. *See Langley ex rel. D.A.S. v. Colvin*, No. 1:13-CV-1374-CLS, 2014 WL 2465293, at *6–7 (N.D. Ala. May 30, 2014) (holding ALJ properly developed record even though plaintiff did not attend consultative examination ordered by ALJ because "the ALJ offered claimant a reasonable opportunity to be examined" and his "decision to decline that opportunity should not be held against the ALJ").

Plaintiff would now have the Court mandate that the ALJ order a second consultative examination on a claim Plaintiff abandoned. On this record, the Court declines to do so, and this claim fails.

## D. The ALJ did not err in evaluating the listing.

At step three, the ALJ assesses whether the plaintiff's impairment meets or equals an impairment in the listings. *Crayton v. Callahan*, 120 F.3d 1217, at *1219 (11th Cir.

1997). It is the plaintiff's burden to prove he satisfies a listing. *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014). To do so, the plaintiff must show he can satisfy all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The ALJ is not required to explicitly evaluate a plaintiff's impairments under every listing, and "[b]y not discussing a particular listing, the ALJ implies that the claimant does not meet the criteria of that listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

The ALJ determined Plaintiff did not satisfy a listed impairment. R. 18. Despite abandoning his claim of a mental impairment, Plaintiff now argues that the ALJ erred by not evaluating Plaintiff's alleged mental impairment under listing 12.05. Doc. 15 at 12. This argument is unconvincing.

The ALJ was not required to explicitly discuss the reasons Plaintiff did not satisfy listing 12.05. *See Hutchison*, 787 F.2d at 1463. Instead, the Court's concern is whether substantial evidence supports the ALJ's finding that Plaintiff's impairments do not qualify for this listing. Listing 12.05 pertains to intellectual disabilities, and satisfaction of this listing requires the plaintiff at least "(1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton*, 120 F.3d at 1219.

In discounting Plaintiff's "special ed" claim, the ALJ relied on Dr. Koulianos's PRT assessment in which he found Plaintiff had no medically determinable impairments. *See* R. 18 (finding Dr. Koulianos's PRT assessment persuasive). The PRT assessment constitutes substantial evidence supporting the ALJ's finding. *See Martin*, 894 F.2d at 1529. Notably, the record evidence is almost entirely focused on Plaintiff's physical impairments, and the

14

evidence relevant to his mental impairments is minimally informative. Plaintiff's decision to abandon his mental impairment claim suggests he was aware that the evidence would likely not satisfy the listings. *See Sullivan*, 493 U.S. at 530; see *also Crayton*, 120 F.3d at 1219. Regardless, it was Plaintiff's obligation to offer sufficient evidence to satisfy a listing. *Castle*, 557 F. App'x at 852. He failed to do so.

## V.     CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 15) is DENIED;

2. The Commissioner's Motion for Summary Judgment (Doc. 16) is GRANTED; and

3. The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 30th day of March, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE